Gittel Gordon, Esq.
Law Office of Gittel Gordon
State Bar # 65979
P.O. Box 950
La Jolla, CA 90038
(858) 459 2410 Phone
(858) 750-3603 Facsimile
Attorney for SILVA MAMIGONIAN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SILVA MAMIGONIAN

   PETITIONER,

  V.

  DEFENDANTS
MICHAEL BIGGS, FIELD OFFICE
DIRECTOR, CITZENSHIP
IMMIGRATION SERVICES(CIS),
DEPARTMENT OF HOMELAND
SECURITY, SACRAMENTO
TIMOTHY AITKEN, FIELD OFFICE
DIRECTOR, BUREAU OF IMMIGRATION
AND CUSTOM ENFORCEMENT (ICE),
DEPARTMENT OF HOMELAND
SECURITY, SACRAMENTO,
SUSAN CURDA, DISTRICT DIRECTOR
OF SACRAMENTO,CITIZENSHIP
IMMIGRATION SERVICES (CIS),
JOHN MORTON, DIRECTOR OF ICE
ALEJANDRO AYORKAS, DIRECTOR OF
CIS;
JANET NAPOLITANO, SECRETARY OF
THE UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;
ERIC H. HOLDER JR., ATTORNEY
GENERAL OF
THE UNITED STATES,

Case No.:

Memorandum in Support of
Petition for Writ of
Habeas Corpus,
Injunctive and
Declaratory Relief,
Mandamus

## I.    INTRODUCTION

A. The Writ of Habeas Corpus "...is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290-1 (1969); U.S. Constitution, Article I, Sec. 9, Cl. 2.  See also:  *Payton v. Rowe*, 391 U.S. 54 (1968), *Townsend v. Sain*, 373 U.S. 293; *Fay v. Noia*, 372 U.S. 291 (1963).  The power of the court to inquire in habeas "is plenary." *Townsend,* Id.

Federal courts have jurisdiction to review certain immigration matters in habeas corpus including decisions which result in Petitioner's detention and restraint of freedom.  28 U.S.C. 2241.  Habeas remedies under 28 U.S.C. Section 2241 were not removed under AEDPA or the IIRIRA, *Magana-Pizano v. INS* 200 F.3d 603, 609 (9th Cir. 1999).

The so called jurisdiction stripping provisions .of the REAL ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310-311 (2005), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.

L. No. 104-208, 110 Stat. 3546 (1996), did not remove

the jurisdiction of the District Courts for Habeas

Corpus or other relief for aliens, except for those

seeking to directly attack or seek "review of an *order

of removal*" ); **INS v. St. Cyr, 533 U.S. 289, 298, 150

L. Ed. 2d 347, 121 S. Ct. 2271 (2001)** (emphasizing "the

strong presumption in favor of judicial review of

administrative action and the longstanding rule

requiring a clear statement of congressional intent to

repeal habeas jurisdiction", *See e.g.,* **Puri v.

Gonzales, 464 F.3d 1038, 1041 (9th Cir. 2006)** (holding

that "the REAL ID Act's jurisdiction-stripping

provisions . . . does [sic] not apply [if the] claim is

*not a direct challenge to an order of removal* "

(emphasis added)); **Kumarasamy v. AG of the United

States, 453 F.3d 169, 172 (3d Cir. 2006)** (holding that

an alien who is challenging the legality of removal

because he allegedly never received notice of his

removal order is "not seeking review *of* an order of

removal");Accord,

Singh v. Gonzalez, 499 F.3d 969 (9th Cir.,2007), **Ali v. Ashcroft, 346 F.3d 873 (9th Cir. 2003)**

Moreover, District Court jurisdiction exists to rule on an alleged pattern and practice of constitutional or statutory violations." **El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review, 959 F.2d 742, 746 (9th Cir. 1992).** In the instant case, we do not seek review of the deportation order. Rather, we are challenging the execution of the order without affording Petitioner a proper, full and fair adjudication of her application for permanent residence, and after year is of government misconduct in denying petitioner a right to adjust her status on the basis of her approved beneficiary petition as the spouse of the United States citizen.

B.Mandamus

Mandamus can be used to compel administrative agencies to act.  The Mandamus Act, codified at 28 U.S.C. § 1361 says, in its entirety:

1361.   Action to compel an officer of the United States to perform his duty.

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

The Mandamus Act authorizes the court to order a remedy.  It does not provide independent, substantive grounds for a suit.  A mandamus plaintiff must demonstrate that: (1) he or she has a clear right to the relief requested;

In the adjustment context, courts have found that the INA establishes a clear right to relief.  See, e.g. Razik v. Perryman, No. 02-5189, 2003 U.S. Dist. LEXIS 13818, *6-7 (N.D. Ill. Aug. 6, 2003) (courts have consistently held that 8 U.S.C. § 1255 provides a right to have an application for an adjustment of status adjudicated).  For example, diversity lottery applicants have established that the

INA confers a right to have their applications
adjudicated.  See Iddir, 301 F.3d at 500 (affirmed in
Ahmed v. DHS, 328 F.3d 383 (7th Cir. 2003));Basova v.
Ashcroft, 373 F. Supp. 2d 192, 199 (E.D.N.Y. 2005);
Paunescu v. INS, 76 F. Supp. 2d 896, 901 (N.D. Ill.
1999). Likewise, in Yu v. Brown, 36 F. Supp. 2d 922,
932 (D.N.M. 1999), the court said that
applicants under the special immigrant juvenile program
"fell within the zone of interest of the
INA provisions for SIJ and LPR status."


 (2) The defendant has a clear duty to perform the act
in question;

As Discussed at length below, USCIS has a clear duty to
adjudicate Silva's application for adjustment of
status, and to do so "fully and fairly". From 2006,
when Silva made her first application for adjustment of
status, until today 2011, USCIS has failed to perform
its clear duty. See discussion infra, section III.

Thus, this court may order the defendant to adjudicate an application. See, e.g., Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002) (duty to adjudicate applications under the diversity lottery program); Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997) (duty to adjudicate visa application);

and (3) no other adequate remedy is available.  Iddir v. INS, 301 F.3d 492, 499 (7th Cir. 2002) subject matter jurisdiction under both the mandamus statute, 28 U.S.C. § 1361, and the federal question statute, 28 U.S.C. § 1331 we discussed at length, throughout this brief, the fact that there is no other remedy to stop this deportation, or to review CIS's erroneous and illegal denials, and current refusal to adjudicate, the adjustment of status applications in this case APA provides a basis for the suit when the government unreasonably delays action or fails to act.  See 5 U.S.C. §§ 555(b) and 706(1) (2)

In this case we urge the court to instruct US CIS not only do we adjudicate Silva's current application for adjustment of status without further delay, but to adjudicate it correctly and within the law. We ask specifically that the US CIS be enjoined from again wrongfully denying Silva was adjustment of status application on the basis of either a false claim to citizenship, fraud, or lack of entitlement because of her on executed removal order. While a mandamus action is usually limited to ordering the agency to adjudicate the application, going further in this case, and instructing the agency how to adjudicate the application is justified because of the agencies egregious refusal to follow the law, regulations, and the courts in adjudicating Silva adjustment applications.

In Silveyra v. Moschorak, 989 F.2d 1012, 1015 (9th Cir. 1993), The Ninth Circuit pointed out that mandamus may not be used to instruct an official how to exercise discretion, where that official has ignored or violated 'statutory or regulatory standards delimiting the scope or manner in which such discretion can be

exercised.'") That is certainly the case here.

## II.  **ARGUMENT**

**A. SILVA IS ENTITLED TO Habeas, Injunctive, DECLARATORY, AND/OR MANDAMUS RELIEF TO ALLOW FOR THE PROPER FULL AND FAIR PROCESSING OF HER ADJUSTMENT OF STATUS APPLICATION**

A. Silva', An "Arriving Alien' Parolee With an Approved Relative Petition As The Spouse Of An American Citizen, Has A Right To Fair Adjudication of Her Adjustment Of Status Application

In Succar v. Ashcroft, 3 94 F.3d 8 (1 st Cir. 2005), the court held that Congress intended in the adjustment of status statute, 8 U.S.C. § 1255(a) that immigration parolees, as a category, be afforded a full opportunity to apply for adjustment of status. The court then struck down as contrary to the statute immigration regulations that barred "arriving alien" parolees from adjusting status if they were in removal proceedings. Three other courts of appeals soon followed. Scheerer

v. US. Attorney General, 445 F.3d 1311 (11 th Cir. 2006); Bona v. Gonzales, 425 F.3d 663 (9th Cir. 2005); and Zheng v. Gonzales, 422 F.3d 98 (3d Cir. 2005). In Kalilu v. Mukasey, 548 F.3d 1215 (9th Cir. 2008),The Ninth Circuit specifically held that to allow execution of a deportation order without affording the full processing of an I-485 ,"rendered worthless" the opportunity the regulations afforded an arriving alien in removal proceedings to establish eligibility for adjustment of status based on a bona fide marriage. (8 C.F.R. §§ 245.2 and 1245.2)

**II. Silva IS ENTITLED TO, AND HAS NOT RECEIVED, THE FULL AND FAIR ADJUDICATION OF HER ADJUSTMENT OF STATUS APPLICATION**

**A.   USCIS IS OBLIGATED TO ADJUST THE STATUS OF AN 'ARRIVING ALIEN' LIKE SILVA, WITH AN APPROVED I-130, WHO IS OTHERWISE ADMISSABLE, REGARDLESS OF AN UNEXECUTED ORDER OF DEPORTATION**

A noncitizen "adjusts status" by applying for lawful permanent residence while in the United States.  8 U.S.C. § 1255(a), the general adjustment of status statute, allows a noncitizen to apply for adjustment of status to that of a lawful permanent resident if he or she 1) has been inspected and either admitted or paroled into the United States; 2) is the beneficiary of an approved petition that makes an immigrant visa

immediately available; and 3) is otherwise eligible for permanent residence. *See* 8 U.S.C. § 1255. There are no limits in the statute to the adjustment eligibility of a parolee in removal proceedings. *Succar*, 394 F.3d at 10. Congress's intent behind the adjustment statute was to relieve the burden on the petitioning party in the U.S., as well as on U.S. consulates abroad, and on the noncitizens themselves. *Succar*, 394 F.3d at 22.

      Prior to 1997, there were two major types of proceedings to expel a noncitizen from the United States: exclusion proceedings, which were brought against arriving aliens, that is, noncitizens who had never made an entry into the United States; and deportation proceedings, brought against noncitizens who had entered the United States. Under this former model, a paroled arriving alien in exclusion proceedings was not barred from applying for adjustment of status. Generally, however, only the former INS had jurisdiction over the adjustment applications of individuals in exclusion proceedings. *Succar*, 394 F.3d at 16-17 (quoting *Matter of Castro*, 21 I&N Dec. 379 (BIA 1996)); *see also* 71 Fed. Reg. at 27586 (supplemental comments to the interim regulations describing this history). Moreover, an individual remained eligible to adjust even when there was a final order of exclusion against him. *See Matter of C-H-*, 9 I&N Dec. 265 (INS 1961).

4

With the passage of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. Law 104-208, Division C, 110 Stat. 3009 (September 30, 2006), Congress did away with exclusion and deportation proceedings and instead created a single "removal" proceeding. 71 Fed. Reg. 27586. Following this, the former INS adopted a regulation that barred "arriving aliens" who were in removal proceedings from adjusting status. *See* former 8 C.F.R. §§ 245.1(c)(8); 1245.1(c)(8) (1997). At the same time, INS also for the first time adopted a regulation defining the term "arriving alien," such that the term encompassed almost all parolees. 8 C.F.R. §§ 1.1(q); 1001.1(q).[2] As a result, almost all paroled arriving aliens who were in removal proceedings were prohibited from applying for adjustment of status on any basis and in any forum – that is, before either an immigration judge or the immigration service. *Succar*, 394 F.3d at 8.

---

[2]  The regulatory definition of an arriving alien currently reads, in relevant part:
> The term *arriving alien* means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.

8 C.F.R. §§ 1.1(q), 1001.1(q).

5

Four federal courts of appeals struck down 8 C.F.R. §§ 245.1(c)(8) and 1245.1(c)(8). *Scheerer v. Attorney General*, 445 F. 3d 1311 (11th Cir. 2006); *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98 (3d Cir. 2005); *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005). After conducting a thorough statutory analysis, these courts determined that the majority of parolees were in removal proceedings and that the regulations thus barred most parolees from being able to adjust in proceedings. The courts found that this result violated the adjustment statute, which specifically states that parolees are eligible to adjust status. 8 U.S.C. § 1255(a); *Bona*, 425 F.3d at 669-670 (quoting *Succar*, 394 F.3d at 27); *Scheerer*, 445 F.3d at 1321-22; *Zheng*, 422 F.3d at 118. In decisions that ultimately were vacated following publication of the interim rule, two other courts of appeals upheld the regulations. *Momin v. Gonzales*, 447 F.3d 447 (5th Cir. 2006), vacated and remanded, 2006 U.S. App. LEXIS 21923 (5th Cir. Aug. 25, 2006) and *Mouelle v. Gonzales*, 416 F.3d 923 (8th Cir. 2005), vacated and remanded, 126 S. Ct. 2964 (2006).

The May 12, 2006, interim rule was specifically adopted in response to this litigation. 71 Fed. Reg. 27587. EOIR and USCIS amended the regulations to "acquiesce" to the four courts of appeals that held that the prior regulatory bar on an "arriving alien" in proceedings adjusting status

6

violated the adjustment statute. 71 Fed. Reg. at 27587 (citing *Succar; Bona;*

*Zheng;* and *Scheerer*). The agencies recognized that the former regulation

was unenforceable in these four circuits – covering 18 states – and that it

was not in the public interest to allow this conflict in the law to continue. 71

Fed. Reg. at 27590. Thus, the intent of the interim regulations was to bring

the regulations into compliance with these four decisions which held "that

the Attorney General must provide an opportunity for 'arriving aliens' in

removal proceedings to apply for adjustment on the basis of a valid

immigrant visa petition." *Kalilu v. Mukasey,* 516 F.3d 777, 780 (9th Cir.

2008).

In addition to repealing the regulatory bar on adjustments, the interim

regulations also address jurisdiction over the adjustment applications of

arriving aliens in removal proceedings. Using the model of the prior

exclusion proceedings, the interim regulations provide USCIS with

jurisdiction to adjudicate the adjustment applications of "arriving aliens" in

removal proceedings.[3] This result is accomplished in two steps: first, the

regulations provide that USCIS has jurisdiction to adjudicate an adjustment

application of any alien "unless the immigration judge has jurisdiction to

---

[3]      The limited exception to this, not relevant here, concerns advance
parolees who meet certain regulatory criteria. *See* 8 C.F.R. §
1245.2(a)(1)(ii).

7

adjudicate the application under 8 C.F.R. § 1245.2(a)(1)." 8 C.F.R. §

245.2(a)(1). Thus, USCIS has jurisdiction over all adjustment applications

except those that an immigration judge has jurisdiction over. Second, the

regulations state that an immigration judge does not have jurisdiction over

an adjustment application of an arriving alien placed in removal

proceedings. 8 C.F.R. § 1245.2(a)(1)(ii).

USCIS instructed the field regarding implementation of the interim

regulations. These instructions direct that an unexecuted final order of

removal, itself, is not a bar to admissibility and therefore not a bar to

adjustment. See "Eligibility of Arriving Aliens in Removal Proceedings to

Apply for Adjustment of Status and Jurisdiction to Adjudicate applications

for Adjustment of Status" (Jan. 12, 2007),

http://www.uscis.gov/files/pressrelease/AdjustStatus011207.pdf.

**B. Silva Is Entitled to Adjust Her Status Regardless of the Fact That She Has An Unexecuted Deportation Order, And Without Having Her Deportation Order Executed**

For these interim regulations to comply with the adjustment statute,

they must allow all eligible "arriving alien" parolees a full opportunity to

apply for adjustment of status. This includes parolees subject to an

unexecuted final order of removal. An unexecuted final removal order,

itself, is neither a bar to adjustment nor an ineligibility factor. USCIS

recognizes this and has adopted a policy allowing adjudication of adjustment

applications of "arriving alien" parolees subject to a final order.

To implement the interim regulations in compliance with the statute,

both USCIS and EOIR – the two agencies that adopted the interim

regulations and that are involved in the process – must cooperate to ensure

that eligible parolees have a full and fair opportunity to have their

adjustment applications adjudicated by USCIS prior to the applicant's

removal.[1] As the Seventh Circuit emphasized, there must be some "minimal

coordination" between these agencies or the "statutory opportunity to seek

adjustment will be a mere illusion." *Ceta v. Mukasey,* 535 F.3d 639, 647

(7th Cir. 2008).

**C. DHS Plans To Deport Silva Without Affording Her A Full And Fair Adjudication Of Her Adjustment Application Are Contrary To Law**

In fact, instant case, it is clear that the two agencies are not cooperating to ensure that Silva has a full and fair opportunity to have her adjustment application adjudicated prior to removal. To the contrary, it appears more likely that, if the agencies are cooperating at all, they are doing so to deny Silva a full and fair adjudication of her adjustment application, and to elude the jurisdiction of the courts.

CIS has twice erroneously and unfairly denied Silva's adjustment in the past.( See Section III., infra)  The first time they wrongfully denied Silva's adjustment

application on the basis that she made a false claim to

citizenship, a charge which the Immigration Court found

did not exist and was not sustained (See Exhibit 7 ).

The second time CIS wrongfully denied Silva's

adjustment application on the basis that she was not

eligible to adjust because she has an unexecuted

deportation order. The courts, and DHS itself, had made

it clear long before that denial that the basis of that

denial was contrary to law.

At this point, ICE has plans to execute Silva's

deportation order immediately (on or before February

17, 2011), and CIS has still not fully and fairly

adjudicated Silva's pending adjustment of status.

Counsel herein is informed and believes (see Exhibit 7)

that CIS will again wrongfully deny Silva's pending

adjustment application just as, or almost at the same

moment as, ICE executes her deportation order, thereby

thwarting Silva's right to a full and fair adjudication

of her adjustment of status application, and attempting

to evade this the jurisdiction of the courts. It is for

this reason, as the Ninth Circuit foresaw in Kalilu,

Supra, that court intervention is mandatory. Silva has

no other avenue to stop the illegal machinations of the

government. It has always been the province of the

court to assure the full and fair execution of the law

by the executive branch.

**III. HABEAS, INJUNCTIVE, DECLARATORY, AND/OR MANDAMUS RELIEF IS REQUIRED TO ASSURE THE FULL AND FAIR ADJUDICATION OF SILVA'S ADJUSTMENT APPLICATION, WHICH HAS BEEN EGREGIOUSLY DENIED BY DHS.**

DHS has failed and refused to afford Silva a full and

fair processing of her adjustment application since

2006, thereby **withholding proper adjudication of her**

**application for approximately 5 years.** During that

time, DHS has wrongfully, on erroneous or illegal

bases, denied two adjustment applications of Silva,

refused to act expeditiously on a third application,

and apparently surreptitiously reopened and re-denied

Silva second application without notice to Petitioner

or Petitioner's attorney of record.

DHS has failed and refused to adjudicate Silva's application for adjustment of status fully, properly, and fairly under the law. But for the wrongful rejection of Silva's prior adjustment applications, Silva would be a legal resident now, and would not be deportable at all. DHS must be estopped from deporting someone who is only presently deportable because of DHS intentional refusal or negligent failure to follow the law.

It is imperative that aliens in Silva's position be accorded the right to have their adjustment of status application adjudicated fairly and fully, and to be awarded adjustment of status if they are eligible. Is clear that DHS wants and intends to deport Silva. It is also clear that DHS has not afforded Silva a full and fair adjudication of her adjustment application on three prior occasions: and it is likely that they will do so in the pending case, unless Silva is granted relief herein, and DHS is estopped from deporting Silva

until her adjustment application is fully and fair

adjudicated.

**A. First Erroneous And Unfair Rejection Of I-485**

Silva applied to adjust her status on 10/13/2006. Her

application was denied by CIS on the basis that she had

made a false claim to citizenship. Thereafter, in

removal proceedings held before this Court on June 26,

2009, the government charged Mrs. Mamigonian  with the

violation of : Section 212(a)(6)(C)(i): fraud or

willful misrepresentation of a material fact to procure

a visa; violation of Section 212(a)(8)(C)(ii): falsely

representing citizenship; and violation of section

212(a)(7)(A)(i)(1): not in possession of a valid entry

document.

 The Immigration Court found that that neither of the

first two charges could be sustained (See Exhibit 9.

MTR). The Court specifically stated that, "…the Court

does not conclude that the respondent falsely

represented herself to be a United States citizen...,

", and further that, "The Court does not sustain the

charge that the respondent procured a benefit under the

Act by fraud or material misrepresentation

**B. Second Erroneous and Unfair Rejection of I-485-2009**

A subsequent I - 485 was filed, and was also

erroneously denied by CIS. We enclosed as Exhibit

7(MTR), the Notice of Decision of December 7, 2009,

denying the subsequent I -485 which was filed on July

30, 2009. The denial states that Silva is ineligible to

apply for adjustment of status because she was ordered

removed. This finding is also contrary to law. As

discussed, infra, Silva's unexecuted removal order **does**

**not** render her ineligible for adjustment. The current

regulation, and prior to that, the interim regulations

of 2006, provides that CIS has jurisdiction to

adjudicate an application for adjustment of status of

any alien, unless the Immigration Judge has

jurisdiction to adjudicate the application. Under 8 C.

F. R. 1245.2, the Immigration Judge has no jurisdiction

to adjudicate anI- 485 for an" arriving alien", such as

Silva. Therefore, the jurisdiction necessarily lies

with CIS. The applicable regulation states: Sec. 245.2

Application.

(a) General--(1) Jurisdiction. USCIS has jurisdiction

to adjudicate an application for adjustment of status

filed by any alien, unless the immigration judge has

jurisdiction to adjudicate the application under 8

CFR 1245.2(a)(1). USCIS has the authority to adjudicate

an adjustment application by an "arriving alien" with

an unexecuted final order of removal. USCIS has

instructed the field that an unexecuted final order of

removal, in and of itself, is not a bar to

admissibility and therefore not a bar to adjustment.

See Memorandum of Michael L. Aytes, Associate Director,

Domestic Operations,

January 12, 2007.

**http://www.uscis.gov/USCIS/Laws/Memoranda/Static_Files_**

**Memoranda/adjuststatus011207.pdf**

 As the Board Of Immigration Appeals stated in Matter

of Yauri, 25 I&N Dec. 103 (BIA 2009) Interim Decision

#3659 (2009) "…we emphasize that the existence of a

final order of removal does not preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status" Moreover, "…the DHS has stated that it recognizes that the USCIS's jurisdiction over the adjustment application of an arriving alien exists regardless of whether there is an unexecuted removal order that remains outstanding against the alien."

Thus, contrary to the erroneous denial of Silva's 2nd I - 485, her unexecuted final order of removal is not a bar to adjustment,  and did not render her ineligible for adjustment. As USCIS correctly notes in the above - - referenced January 12, 2007 memo to the field, supra, an arriving alien can meet all eligibility requirements for adjustment under either INA §§ 245(a) or (i).9 Both the INA and the implementing regulations contain certain bars to adjustment of status. See, e.g., 8 U.S.C. § 1255(c) and 8 C.F.R. §§ 245.1(b) and (c). However, none of these provisions bars an individual from adjusting status because the individual is under a

final order of removal. Thus, there is no bar to
adjustment due to the existence of the final order of
removal.

## C.   Third Unfair Rejection of I-485 -2011

No doubt due to strong arguments made to CIS by current
counsel regarding the erroneous and illegal denial of
the second I-485, CIS reopened the adjudication of the
wrongfully denied I-485. However, without regard to due
process, CIS has kept the reopening of the prior 485,
and the adjudication of it, secret, and refused to
apprise counsel of the fact that the 485 was reopened,
and then again denied, or upon what basis it was again
denied. CIS is well aware that counsel herein has been
representing respondent before CIS since October of
2011. CIS sent a notice that the prior 485 was reopened
to Respondent, but not to counsel, despite counsel's
objection (see Current Exhibit 7 ) Moreover, counsel
has been informed by the offices of Sen. Feinstein, and
Congressman Lungen, that the 2009 I-485 was again
denied, after the case was reopened. No notice of that

denial or the basis for that denial has been furnished

counsel, or Respondent, again, despite counsel's

strenuous objections.(Neither has it been furnished to

Respondent's prior counsel). These surreptitious and

secret actions on behalf of DHS deprive Silva of due

process of law. Silva has a right to be represented by

counsel and to have her counsel be informed and given

notice on every action taken by DHS. In addition,

refusing to apprise counsel of the basis for the

current denial, deprives Silva of right and ability to

contest that, and further illegal and/or unfair actions

by DHS.

**D.   Forth Unfair Adjudication, Or Lack Of It, Silva's**

**Pending I-485.**

A new I-485 was filed in October, 2010, and is still

pending in this case. (We attach a confirmation of the

filing of the I-485 as Exhibit 16).See also Declaration

of Gittel Gordon, Exhibit)

**E. DHS Flaunts Its Refusal to Follow The Law**

CIS is blatantly withholding adjudication of Silva's currently pending I-485. This application was filed in October of 2010, with well-documented requests to expedite because of imminent deportation. A pending deportation is, of course, a high-priority reason upon which to expedite adjudication. This is especially mandated when the service is blatantly erred in denying two prior adjudications. However,  despite the initial request to expedite made upon filing, and numerous e-mails and phone calls to the CIS field office in Sacramento requesting that the application be expedited, by senators and, as well as by counsel, CIS has refused to issue a decision.(See Exhibit 13, correspondence to and from CIS, as well as Exhibit 14, response made to Congressman Don Lungren's office) Silva is entitled to adjust her status, and there is no rightful basis upon which her application can be denied.

There are three general eligibility requirements for adjustment of status

under 8 U.S.C. § 1255: an application for adjustment; eligibility to receive

an immigrant visa and admissibility to the U.S.; and an immediately

available visa number.  8 U.S.C. § 1255(a).

Silva has made an application, she is eligible to

receive a visa, she is admissible to the United States,

and, as an immediate relative of a U.S. citizen, a visa

number is immediately available to her.

In normal practice, after the adjustment application is

filed, CIS schedules an interview. An exception would

be in a case where the bonafides of the marriage are

not in question, as in the instant case, and the case

can be approved without an interview.  At the

interview, if CIS believes that the applicant is

inadmissible for any reason (other than a false claim

of citizenship, which CIS is precluded from claiming,

see below), CIS will process an application for a

waiver. As the spouse of an American citizen, Silva

would be eligible for a waiver, even if she had

committed serious criminal violations or fraud. She has not committed any crimes or fraud.

The CIS has neither scheduled an interview, nor approved the 485. Coupled with the fact that CIS has covertly issued a denial after reopening the second 485 application, and CIS refusal to discuss the adjudication of the pending case and refusal to issue a timely decision, it is clear that CIS intends to deny the pending application. CIS is obviously refusing to do so expeditiously, since it would give Silva a chance to contest another illegal and unfair denial. If CIS intended to approve the 485, they could have done so very quickly, since the bona fides of Silva's long marriage, which has produced two beautiful children, are not questionable. If CIS had a valid reason for denial, they also would have denied it by now. If CIS believes that there is some other basis that Silva is inadmissible,( other than the two bases(false claim of citizenship and fraud) with which they charged Silva unsuccessfully in prior litigation, which CIS is now

estopped from asserting), common practice would require them to give Silva notice and an opportunity to pursue a waiver. However, we do not believe there is any bar to admissibility that would require a waiver, or that CIS can rightfully claim any basis to deny this 485. Clearly, Silva is not ineligible for an adjustment of status on either of the bases upon which CIS rejected her adjustment application in the past. She is entitled to have a legally appropriate and correct adjudication of her adjustment of status application.

Counsel is informed and believes(see declaration of Gittel Gordon, Exhibit 2) that CIS intends to again deny the pending application on the grounds that Silva made a false claim to citizenship, even though the Court has already found that this is not true. DHS has made it clear that it does not accept and will ignore the Court's decision, thus refusing to follow the law. DHS was a party to prior deportation proceedings in which that finding was made. DHS lost in its attempt to charge Silva with a false claim to citizenship and

fraud. DHS was represented by counsel (ICE), and had every opportunity to fully present its case for charging Silva with false claim to citizenship and fraud. After a full hearing on the charges, after fully reviewing and assessing the evidence, the Court rejected DHS's claims against Silva, and specifically found that, under the applicable facts and law, there was no false claim to citizenship or fraud on Silva's behalf.

DHS did not appeal the IJ's decision. That decision and those findings are final. DHS, which includes ICE and CIS, is bound by them. The refusal of ICE and CIS to abide by the IJ's decision is alarming and egregious. The doctrine of res judicata provides that the final judgment in this case, on the merits, of the claim that Silva made a false claim to citizenship, bars further claims on the same issue by a party, or their privies based on the same claim. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064,

1077 (9th Cir. 2003); United States v. Smith-Baltiher,

424 F.3d 913, 919 (9th Cir. 2005)

General principles of res judicata and collateral

estoppel apply to deportation proceedings, and prevent

either party from raising or re-litigating matters that

were finally resolved in earlier proceedings. See

Ramon-Sepulveda v. INS, 824 F.2d 749, 750 (9th Cir.

1987) (per curiam) Res judicata bars the government

from attempting to use charges against Respondent,

which have already been litigated and rejected by the

Court, for any reason. This is true even if DHS thinks

that it has evidence to support the charge, and even if

that evidence wasn't presented in Court.(Ibid)

Moreover, DHS, as a party to the deportation

proceedings, in which it was found that Silva did not

make a false claim to citizenship, is estopped and

barred, by the legal principle of collateral estoppel,

from raising that claim again in any context: the

government is estopped from again raising any issue

that was decided, or should have been decided, in the
prior court proceedings.

 Further, under Section 103(a) of the INA, a
determination and ruling by the Attorney General, with
respect to all questions of law "shall be controlling".
The IJ sits as an agent of the Attorney General, and
DHS, and all of its branches, are bound by the IJ's
decision on this issue.

All of would seem axiomatic: DHS made charges against
Silva, they presented their evidence and their charges
in court, and they lost. End of story? DHS refuses to
accept the Immigration Judge's decision, and has
devised a tricky and devious strategy to defeat and
ignore regulations, court holdings, national policies,
and, in general, the law.

**F.DHS IS REFUSING TO FOLLOW ITS OWN NATIONALLY STATED POLICIES**

For example, it is clearly law and current policy for
DHS to join a motion to reopen, continue, or terminate
removal proceedings, thus terminated or withdrawing the

removal order, to allow an American citizen spouse,

like Silva, with an approved I-130, to process an

adjustment of status administratively. Policy

statements from DHS and ICE since 2005 have made it

clear that where somebody has a prima facie case

pending, their proceedings should be terminated, and

they should be able to process administratively through

CIS. For example, in 2005, William Howard, the

Principal Legal Advisor for ICE, stated that:"[w]here a

motion to reopen for adjustment of status or

cancellation of removal is filed on behalf of an alien

with substantial equities, no serious criminal or

immigration violations, and who is eligible to be

granted the relief except that the motion is beyond the

90-day limitation contained in 8 C.F.R. § 1002.23,

strongly consider exercising prosecutorial discretion."

William Howard, Principal Legal Advisor, ICE,

"Prosecutorial Discretion" (Oct. 24, 2005)

http://www.aila.org/content/default.aspx?docid=17718 .

In the above memo, legal adviser Howard was talking about people who, like my Silva, have previously been ordered deported. Silva has substantial equities, no serious criminal or immigration violations, and is eligible to be granted an adjustment of status. Prosecutorial discretion should have been exercised, pursuant to National DHS policies, to take this case out of removal and court proceedings.

The recent "Morton Memo" estimates that ICE only has resources to remove, annually, at the most, 4% of non citizens who are in the U.S. illegally, and emphasizes that those resources should be focus on removing serious criminal offenders. The Morton instructs that in cases involving a US citizen spouse, where an I-130 is pending, the Chief Counsel should join in an Motion to Reopen and terminate deportation proceedings, to allow for CIS to process administratively. See John Morton, Assistant Secretary, ICE, "Civil Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens" (http://www.ice.gov/doclib/detention-

reform/pdf/civil_enforcement_priorities.pdf June 2010).
Although the Morton memo did not focus on aliens who already had deportation orders, it would seem that the same reasoning should lead to the same policy and the same enforcement. Silva has better than a pending I-130. She has an approved I-130.

 Moreover, the earlier Howard memo specifically focused on those who, like Silva, already had deportation orders, and suggested that prosecutorial discretion be exercised in such cases, to terminate proceedings. Both memos, especially the recent Morton memo, express a strong national enforcement priority to focus limited agency resources on deporting criminal aliens, not those with pending adjustment applications who are spouses of American citizens.

**G. DHS's Actions Also Undermines The Statutory And Regulatory Scheme**

Moreover, and of equal, or even greater concern: DHS's actions also undermine the statutory and regulatory scheme which has attempted to make the processing of

adjustment of status easier for arriving aliens with deportation orders, by taking the processing of these applications away from the overburdened courts, to allow for and mandate that these applications be processed and administratively by CIS. The stated and strong policy and priority of US immigration Law, is the unification of families. Additionally, as the Ninth Circuit has said, to allow the ICE to remove aliens who are following the statutory scheme to process adjustments with CIS defeats and frustrates the law. Kalilu v. Mukasey, 548 F.3d 1215 (9th Cir. 2008).**The Ninth Circuit has already made its position clear. Spouses of American citizens, like Silva, who are processing status, should not be deported to thwart their right to adjust**. Yet, in the instant case, Sacramento ICE has refused to terminate Silva's case, or even to extend the brief Stay of Deportation which was rightfully granted, given the equities, to allow enough time for CIS to properly and fully process the application for adjustment of status. This refusal is

completely contrary to the policy expressed by the

Howard memo, and the policy and tenor expressed in the

Morton memo.

Thus, despite the strong policy of DHS to join in

Motion's to Reopen and Terminate cases that involve US

citizens spouses with approved I-130s, take such cases

out of the litigation arena, and allow them to be

administratively processed, ICE stubbornly refused.

What was their basis for acting contrary to the

established National policy and insisting on executing

the deportation of this loving wife and mother of

American citizens? The wrongful assertion, barred by

law, that Silva made a false claim to citizenship (See

Exhibit 6, MTR). Further, when challenged by press and

Congressional inquiries, ICE issued an utra-vires

statement, again, barred by law, that Silva is being

deported because she made a false claim to citizenship

(see Current Exhibit 6). And, counsel is informed and

believes that CIS is waiting until the last minute

before Silva's scheduled deportation to again

wrongfully and illegally deny Silva's adjustment of status application on the basis that Silva made a false claim to citizenship. In this way, CIS and ICE are conspiring to do what the Immigration Court denied them the right to do: to deport Silva on the basis of a false claim to citizenship that the Court would not sustain, under the law.

IV. **Silva, Her American Citizen Husband, And Her American Citizen Children, As Well As Her Lawfuly Permanent Resident Parents, Will Suffer Irreparable Injury If The Court Does Not Issue The Instant Habeas, Injunctive And Declaratory Relief, And/Or Mandamous Relief.**

The ramifications of government's illegal insistence on continuing to charge Silva with a false claim to citizenship is catastrophic. Not only will Silva be deprived of her right to fair adjudication of her adjustment of status, as warranted in her case: not only will she be deprived of her right to litigate these issues in court when the government acts

illegally or wrongfully, but also, she will be barred
forever from returning to the United States and her
family, based upon an ultra-Vires and illegal assertion
of the claim that Silva made a false claim to
citizenship, a claim that DHS is estopped and barred
from making. When the court fails to act to curtail the
executive branch's abuse of power, and the flaunting
refusal to abide by the law and stated policies, we can
look forward to living in a police state, devoid of the
system of checks and balances which preserve our form
of government and due process of law. DHS attempts to
"bypass its own regulations" and final judgments cannot
be condoned, Ramon-Sepulveda v. INS, 863 F.2d
1458, 1461 (9th Cir. 1988).

For the above reasons, we respectfully urge this
Court to supply a remedy where so many wrongs have
occurred and no other effective forum exists.

Dated: February 11, 2011

By: _____
Gittel Gordon, Attorney for Petitioner

MAMIGONIAN: PETITION FOR WRIT OF HABEAS CORPUS, INJUNCTIVE AND DECLARATORY RELIEF,
MANDAMUS AND TEMPORARY RESTRAINING ORDER- 41